**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

BRIAN D.

                              Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 3:21-CV-1368
                                                    (CFH)

                              Defendant.

─────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Lachman, Gorton Law Firm                PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
Attorney for plaintiff

Social Security Administration          KRISTINA D. COHN, ESQ.
6401 Security Boulevard                 MICHAEL L. HENRY, ESQ.
Baltimore, Maryland 21235
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Brian D.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his applications for disabled child and supplemental security income benefits.

─────────────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), and General Order 18.  See Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

See Dkt. No. 1 ("Compl."). Plaintiff moves for judgment on the pleadings and for the calculation of benefits, "or, in the alternative, . . . for further proceedings." Dkt. No. 9 at 26. The Commissioner filed a motion to remand the Commissioner's decision for further administrative proceedings. See Dkt. No. 10. Plaintiff responded, opposing the Commissioner's motion because although he agrees that remand is appropriate, he argues that "a remand solely for calculation of benefits is warranted (or alternatively should be remanded for further proceedings, but without allowing the ALJ to introduce any new evidence)." Dkt. No. 11 at 1. For the following reasons, the Commissioner's decision is reversed, and plaintiff's and the Commissioner's motions are granted insofar as they seek remand for further proceedings.

## I. Background

On January 8, 2016, plaintiff filed a Title II applications for child's insurance benefits and on April 15, 2019, plaintiff filed a Title XVI application supplemental security income benefits. See T. at 605, 953-59, 967-73.[3] Plaintiff alleged a disability onset date of January 1, 2009. See id. at 605, 967.[4] The Social Security Administration ("SSA") denied plaintiff's claims on April 8, 2016. See id. at 88. Plaintiff requested a hearing, see id. at 104, and a hearing was held before Administrative Law Judge ("ALJ") James Francis Gillet on June 20, 2018. See id. at 32-61. On August 28, 2018, ALJ

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

[4] In plaintiff's Title XVI application for supplemental security income benefits, he indicated that his "disability began on June 1, 2008." T. at 953. However, the ALJ stated that plaintiff was alleging a disability onset date of January 1, 2009. Id. at 605. Plaintiff does not dispute the ALJ's statement or reliance on the January 1, 2009, date. See generally Dkt. No. 9.

Gillet issued an unfavorable decision.  See id. at 13-27.  On April 3, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  See id. at 1-5. Plaintiff sought review of the Commissioner's decision by filing a complaint in this Court, and the parties stipulated to remanding the case for further administrative proceedings. See Brian D. v. Saul, 3:19-CV-605 (TWD), Dkt. Nos. 1, 10.

On remand, ALJ Bruce Fein held a hearing on August 11, 2020.  See T. at 629-49.  On October 21, 2021, ALJ Fein issued an unfavorable decision.  See id. at 604-20. Plaintiff did not appeal the denial to the Appeals Council, but he timely brought this action before the Court.  See Dkt. No. 1.

## II.  Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal

citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

Under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Sentence six states,

> [t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

Id.

4

"'Remand is appropriate where there are gaps in the record or further development of the evidence is needed,' such as where new, material evidence has become available." Fuimo v. Colvin, 948 F. Supp. 2d 260, 264 (N.D.N.Y. 2013) (quoting 42 U.S.C. § 405(g)).  "A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence and that there is good cause for the failure to incorporate such evidence into the record' at the administrative hearing."  Id. (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir.1983) (quotation marks omitted)  "Remand may also be appropriate if the Commissioner 'misapplies the law or failed to provide a fair hearing.'" Id. (citation omitted).  "However, where the underlying administrative decision is not supported by substantial evidence, reversal [without remanded for rehearing] is appropriate because there would be no useful purpose in remanding the matter for further proceedings."  Id.

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

   The Second Circuit employs a five-step analysis, based on 20 C.F.R.

§ 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a "severe impairment" which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him [or her] disabled without
> considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a "listed" impairment is unable
> to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Five Step Disability Evaluation

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff "had not attained age 22 as of January 1, 2009, the alleged onset date" and

he had "not engaged in substantial gainful activity since January 1, 2009, the alleged

onset date[.]"  T. at 607.  At step two, the ALJ found that plaintiff had "the following

severe impairments: irritable bowel syndrome (IBS), bipolar disorder, generalized

anxiety disorder, post traumatic stress disorder (PTSD), social phobia, and asthma."  Id.

At step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 608.

Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except he is able to frequently climb ramps or stairs, but should not climb
> ropes, ladders or scaffolds.  [Plaintiff] can frequently balance, stoop, kneel,
> crouch and crawl.  [Plaintiff] should avoid concentrated exposure to
> unprotected heights, excessive vibration, and pulmonary irritants such as
> fumes, odors, gases, dust, and poorly ventilated areas.  He should have
> restrooms that are readily accessible and available to [plaintiff].  He can
> work in a low stress job, which is defined as involving only occasional

decision-making, occasional changes in the workplace setting, and occasional use of judgment required on the job.  [Plaintiff] should have no more than occasional interaction with coworkers, supervisors, and the public.

Id. at 610.  At step four, the ALJ determined that plaintiff did not have any past relevant work.  See id. at 618.  At step five, "considering [plaintiff's] age, education, work experience, and residual functional capacity," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform[.]"  Id.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of th[e] decision."  Id. at 619.

## IV.  Relevant Portions of Medical Opinions and the ALJ's Decision

### A.  Medical Opinions

After conducting plaintiff's 2016 consultative examination, Mary Anne Moore, Psy.D., opined that plaintiff had "[m]oderate to marked limitation[s] with regard to appropriately dealing with stress, relating adequately with others, making appropriate work decision, and maintaining a regular schedule."  T. at 414.  In 2016, state agency medical consultant A. Chapman Psy.D., determined that plaintiff retained "the capacity to perform the basic mental demands of unskilled work."  Id. at 73.  After conducting the 2019 consultative examination, Amanda Slowik, Psy.D., opined that plaintiff's "ability to sustain an ordinary routine and regulate emotions is moderately to markedly limited."  T. at 1297.

In 2018, Mark Shumeyko, M.D., plaintiff's gastroenterologist, opined that because of plaintiff's "severely symptomatic irritable bowel (syndrome)" plaintiff would be off task for more than thirty-three percent of a workday and would miss more than four days of work per month.  See T. at 1463-64.  He also checked "yes" for the following four contentions: (1) the "[m]edical conditions suffered by [plaintiff] would require unlimited access to the bathroom; (2) "[t]he need to use the bathroom could be accommodated in a job which allowed for a break in the morning, a break in the afternoon, and a break for lunch"; (3) "[t]he need to use the bathroom would be urgent and immediate; and (4) "[t]he need to use the bathroom would not be urgent and immediate and could be accommodated by standard breaks in the morning and afternoon and at lunch[.]"  Id. at 1463.  Dr. Shumeyko submitted an addendum to his medical opinion in 2020 in which he stated that "[a]nxiety and stress clearly triggers flares of IBS and can be the initial factor in causing irritable bowel to develop.  The symptoms of irritable bowel often cause anxiety conditions to worsen and patients [] fear [] bowel attacks in public."  Id. at 1470.  Dr. Shumeyko wrote, "I have no doubt [plaintiff's] anxiety significantly exacerbates his IBS."  Id.  Dr. Shumeyko reiterated this opinion in his 2021 addendum where he stated that plaintiff's condition was "about the same; limitations about the same[.]"  Id. at 1559.  Dr. Shumeyko noted that "[t]he challenge in [plaintiff's] situation is that his bipolar disorder can trigger IBS attacks and the stress of IBS attacks has significant effect on his emotions."  Id.

During the 2020 remand hearing, Nitin Paul Dhiman, M.D., testified.  See T. at 633, 1466-68.  Plaintiff's counsel asked Dr. Dhiman whether he thought that plaintiff's IBS "would be significant enough that [plaintiff] would need access away from the

house, in a work situation, that he would need access to a bathroom at all times[.]"  Id. at 637-38.  Dr. Dhiman responded, "[a]bsolutely, yes.  I would say that."  Id. at 638.  Dr. Dhiman then agreed that plaintiff's need to use the restroom would be sporadic, urgent, and immediate.  See id.  Plaintiff's counsel asked whether "the need to use the bathroom at work, could that be as much as many times especially on a day when he's having diarrhea, five, six, seven, eight, nine times[.]"  Id.  Dr. Dhiman stated, "[y]es, that would plausible."  Id.  He explained that it was "pretty consistent" with IBS symptoms that plaintiff might take longer in the restroom than most other people.  Id. at 639.  He testified that "about one day per month" plaintiff's "IBS would be so bad, he just simply could not get into work at all[]" or he would need to leave work early.  Id.

### B.  ALJ Decision

In reviewing the medical opinions, the ALJ gave "good weight[]" to Dr. Moore's opinion and noted her moderate to marked findings.  T. at 615.  He explained that "the overall record supports moderate limitations in these areas."  Id.  The ALJ stated that plaintiff "demonstrated that he has some ability to maintain a regular schedule and make appropriate work decision by attending his regularly scheduled treatment and medical management appointments which is not consistent with a marked limitation."  Id. (citing T. at 1471-1554).  "Originally, [plaintiff] had difficulties with compliance, but he improved his attendance and taking his medication, which supports moderate limitations in these areas."  Id.  The ALJ also stated that "the record indicates that [plaintiff] has difficulties dealing with stress.  It noted [plaintiff] had increased anxiety and depression symptoms pertaining to the Social Security application process."  Id. (citing T. at 1517-54).  The ALJ explained that plaintiff "is able to handle the stress of driving, gaming, and

maintaining close relationships with family members." Id.  The ALJ concluded that "[s]ince [plaintiff] is able to handle some stress, a moderate  limitation in this area is appropriate.  Due to [plaintiff's] increased IBS symptoms from stress (anxiety), a low stress job with readily accessible restrooms were adopted in the residual functional capacity." Id. at 615-16.

The ALJ then reviewed Dr. Slowik's opinion and concluded that her opinion was "given less weight [than Dr. Moore's opinion], but still given some weight."  T. at 616.  The ALJ explained that "the moderate to marked limitation on [plaintiff's] ability to sustain an ordinary routine and regulate emotions is not entirely consistent with the evidence in the record.  The record shows that [plaintiff] missed appointments and notes that [plaintiff] did not have transportation." Id. (citing T. at 1161-1293).  However, the ALJ noted that plaintiff "testified that he has his own vehicle now and no longer has transportation problems.  More recent records indicate that [plaintiff] attended telepsychiatry visits on a consistent basis." Id. (citing T. at 1517-54).  Finally, the ALJ stated that "[p]ertaining to regulating emotions, the mental status examinations note [plaintiff] as generally having a constricted affect and sometimes being anxious, however, there is no mention of [plaintiff] being uncooperative or having emotional outbursts during visits." Id.

The ALJ next gave Dr. Dhiman's testimony "great weight."  T. at 616.  He reiterated Dr. Dhiman's testimony that plaintiff "would have about one day per month that he would be unable to work and about one day a month [plaintiff] would need to leave early due to the symptoms of his physical impairments." Id. at 614.  He stated that "[d]ue to [plaintiff's] asthma, reported abdominal pain and incontinence, I have

adopted a more restrictive exertional level.  Additionally, Dr. Dhi[]man stated that [plaintiff] could miss one day per month and need to leave work early one day per month."  Id. at 616.  The ALJ explained that "[t]he vocational expert indicated that if [plaintiff] was to miss one day per month and leave early by minutes, that would be tolerated by an employer, however, by hours would not.  Therefore, including this limitation would not affect the outcome."  Id.

The ALJ gave Dr. Shumeyko's 2018 opinion "partial weight."  T. at 617.  The ALJ explained that Dr. Shumeyko's conclusion that plaintiff's "severely symptomatic irritable bowel syndrome and that [plaintiff] would require access to a bathroom, [] is generally consistent with [plaintiff's] inability to maintain weight prior to treatment and [plaintiff's] reports of incontinence."  Id.  However, the ALJ did not consider Dr. Shumeyko's opinion that plaintiff would be off task for more than thirty-three percent of the day and miss more than four days of work per month to be "consistent with the evidence in the record.  Id.  The ALJ explained that in August 2013, "[plaintiff] reported experiencing abdominal cramping and diarrhea every five to six months.  [Plaintiff] also reported that he had pain in his lower abdomen that did not occur every day, and he could actually go weeks or months without it."  Id. (citing T. at 1085, 1087).  The ALJ noted that "[u]pon physical examination, [plaintiff] was continuously noted as having positive bowel sounds, a nontender abdomen and generally no blood in the rectum."  Id. (citing T. at 1079-1105, 1412-22).  "The records also show that [plaintiff] has gained weight and that his symptoms while not completely gone have been stabilized."  Id. (citing T. at 1413).  The ALJ then reviewed Dr. Shumeyko's 2020 opinion, which the ALJ found to be a "continuation" of the 2018 opinion.  Id. at 618.  He also reiterated Dr. Shumeyko's 2020

opinion statement that plaintiff's 'anxiety significantly exacerbates his IBS.'" Id. (quoting

T. at 1470).  The ALJ concluded that "[a]lthough this is not a function-by-function

analysis, it supports [plaintiff] working in a low stress job." Id.  Finally, the ALJ stated

that Dr. Shumeyko's 2021 addendum was a "continuation" of his 2018 opinion which

noted plaintiff's "periodic IBS flares and mentions this affect on [plaintiff's] mental

health." Id.  The ALJ stated, "Dr. Shumeyko is a Gastroenterologist and noted that he

does not treat [plaintiff's] mental impairments." Id.

### V.  Arguments[5]

Plaintiff argues that "[t]he ALJ commit[ted] legal error because every single

medical opinion of record identifies limitations to staying on task and/or maintaining

attendance yet the ALJ conclude[d] there are none."  Dkt. No. 9 at 25.  Plaintiff contends

that the ALJ erred in limiting plaintiff to "low stress" jobs because it does not address the

underlying cause of plaintiff's anxiety—his IBS.  Id. at 21-23.  He also argues that the

ALJ failed to assess the frequency and duration of plaintiff's use and access to

bathrooms.  See id. at 15-17.  For these reasons, plaintiff asks that the Court grant

judgment on the pleadings in his favor.  See Dkt. No. 11 at 3.

Plaintiff then argues that the matter should be remanded for the calculation of

benefits.  See Dkt. No. 9 at 25.  Plaintiff asserts that "the evidence compels the

conclusion [that p]laintiff is disabled and no purpose would be served by remanding for

rehearing[]" because "[t]he medical records show severe issues with IBS, IBS-related

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

anxiety, and other mental health issues that significantly impact [p]laintiff's ability to stay on task or maintain attendance." Id. Plaintiff contends that "[t]his matter has already been remanded twice and [d]efendant has had the opportunity to obtain new evidence (Dr. Dhiman) whose testimony supports a finding of disability." Id. Plaintiff relies on Drs. Dhiman, Shumeyko, Slowik, and Moore's opinions, and record evidence supporting the medical opinions to support her contention that there is conclusive evidence of disability. See id. at 15-25. In the alternative to calculating benefits, plaintiff contends that this matter "should be remanded for further proceedings, but without allowing the ALJ to introduce any new evidence[.]" Dkt. No. 11 at 1; see also Dkt. No. 9 at 26.

"The Commissioner believes that a remand for further administrative proceedings is warranted under sentence four of 42 U.S.C. § 405(g)." Dkt. No. 10 at 1. The Commissioner asserts that, "[o]n remand, the Commissioner would instruct the administrative law judge [] to offer [plaintiff] an opportunity for a new hearing, evaluate the opinion evidence in accordance with the 20 C.F.R. §§ 404.1527 and 416.927, and issue a new decision." Id. Although the Commissioner agrees that remand is warranted, the Commissioner does not explain on what ground(s) the ALJ erred or remand is necessary. See generally Dkt. No. 10. The only specific argument that the Commissioner responds to is plaintiff's contention that remand for the calculation of benefits is warranted because of the medical opinions supporting off task and absenteeism limitations. See id. at 2. The Commissioner argues that there is not conclusive evidence of disability; rather, there are credibility and weight questions that the ALJ must decide because (1) "Dr. Chapman opined that [p]laintiff could perform the 'basic mental demands of unskilled work,' and he did not specify any off-

task/attendance restrictions"; (2) "Dr. Dhiman testified that [p]laintiff might need to miss work or leave early about 'one day per month', which falls within the parameters of the vocational expert's testimony that an employer would tolerate one absence per month and the need to leave a few minutes early no more than once a month"; and (3) Dr. Shumeyko's medical opinion is contradictory where he checked boxes indicating that plaintiff's need to use the bathroom would and would not be urgent and immediate.  Id. at 2-4.

The Commissioner asserts that as to plaintiff's argument that if the Court were to remand the decision for rehearing, no new evidence should be considered, that "[p]laintiff did not provide any rationale or authority for this position, and the Commissioner is aware of none."  Dkt. No. 10 at 1.  The Commissioner explains that generally, "[w]hen the Court remands an ALJ decision, the Appeals Council generally vacates the entire decision, and 'the ALJ must consider all pertinent issues de novo.'" Id. at 2 (citation omitted).  The Commissioner asserts that because plaintiff's case involves both Title II and Title XIV applications, "the ALJ should be free to develop the record and to evaluate [p]laintiff's functioning through the date of the new decision."  Id.

In his response to the Commissioner's motion for remand, plaintiff argues that although the Commissioner states that the remand being sought is "under sentence four of 42 U.S.C. § 405(g)[,]" that the Commissioner actually seeks a sentence six remand. Dkt. No. 10 at; see also Dkt. No. 11 at 2.  This is because the Commissioner "does not ask for judgment 'affirming, modifying, or reversing' and offers no grounds that would even justify such a judgment."  Dkt. No. 11 at 2.  Plaintiff also asserts that "any remand order cannot permit the introduction of new evidence because [d]efendant has not

fulfilled the statutory requirement" to show good cause as to why new evidence should be permitted.  Id.

# VI.  Analysis

## A.  Whether Judgment on the Pleadings is Warranted[6]

Reversal of the Commissioner's decision is warranted because the ALJ misapplied the law in reviewing of Dr. Shumeyko's treating physician opinion.[7]  "Under the treating-physician rule, a hearing officer generally owes 'deference to the medical opinion of a claimant's treating physician[.]'"  Church v. Colvin, 195 F. Supp. 3d 450, 453 (N.D.N.Y. 2016) (quoting Halloran, 362 F.3d at 32).  "When a treating physician's opinion is 'not consistent with other substantial evidence in the record, such as the opinions of other medical experts[,]' however, the hearing officer need not give the treating source opinion controlling weight."  Id. (citation omitted).  If an ALJ does not afford a treating physician's opinion "controlling weight" he or she must "give 'good reasons'—i.e., reasons supported by substantial evidence in the record—for the weight she affords the treating source's medical opinion."  Schillo v. Kijakazi, 31 F.4th 64, 75 (2d Cir. 2022) (citation omitted).

---

[6] The Commissioner does not respond to the portions of plaintiff's brief that identified the errors in the ALJ's decision.  See generally Dkt. No. 10.  The Commissioner does not argue whether the ALJ's decision should be affirmed, reversed, or modified; rather, the Commissioner's motion focuses only on the nature of the remand.  See id.

[7] "The agency has adopted new regulations for claims filed on or after March 27, 2017, which change how the agency considers the opinions of treating sources."  Schillo v. Kijakazi, 31 F.4th 64, 71 (2d Cir. 2022) "[A]pplication of the treating physician rule . . . is limited to claims . . . that were filed before the effective date of the new regulation and are therefore still governed by 20 C.F.R. § 404.1527."  Id.  As plaintiff's initial application was before March 27, 2017, the treating physician rule applies.  See T. at 162.

Following the Appeals Council's remand order, ALJ Fein noted Dr. Shumeyko's treatment relationship and specialization, and reiterated Dr. Shumeyko's opinion that plaintiff had "severely symptomatic irritable bowel syndrome[.]"  T. at 617.  However, the ALJ determined that Dr. Shumeyko's opinion that plaintiff would be off task more than thirty-three percent of a workday and miss more than four days of work per month was inconsistent with the evidence that plaintiff reported cramping and diarrhea every five to six months; that he could go weeks or months without pain; and that he had positive bowel sounds, a nontender abdomen, no blood in the rectum, and gained weight.  See id. (citing T. at 1085, 1087, 1413).

These reasons do not constitute "good reasons" to discount Dr. Shumeyko's opinion.  The ALJ failed to reconcile Dr. Shumeyko's opinion with evidence that appears consistent with his opinion which was explicitly identified in the Appeals Council's remand order.  See T. at 688-89.  This includes evidence that plaintiff "would need unlimited access to a bathroom."  T. at 688.  The Appeals Council stated that, "[s]pecifically, the record indicates that throughout the period, [plaintiff] complained of alternating periods of constipation and diarrhea, suffered from weight loss, and [plaintiff] reported an inability to obtain or sustain employment due to the need to spend long periods of time in the bathroom."  T. at 688-89 (citing T. at 322-97, 410-16, 428-548, 552-86, 595-96).  Further, as plaintiff states, the ALJ's reliance on a 2013 and a 2014 treatment note do not account for the more recent evidence showing continuing, frequent, and sometimes worsening IBS symptoms.  See Dkt. No. 9 at 18, 20; see also T. at 436, 495, 1163, 1181, 1189, 1241, 1259, 1532, 1545, 1551.

The ALJ also did not discuss whether and to what extent there is a correlation between plaintiff's IBS symptoms causing anxiety and whether such a correlation would be consistent with Dr. Shumeyko's opinion.  See T. at 617-18.  Plaintiff identifies evidence which "shows [p]laintiff's primary and chronic stressors is his IBS and the fear of having an 'accident' in public or at work and, as such, he rarely leaves his home and fears having to work."  Dkt. No. 9 at 21 (citing T. at 322, 332, 336, 369, 372, 433, 474, 485, 493, 1087, 1147, 1163, 1168, 1170, 1173, 1177, 1189, 1194, 1201, 1205, 1208, 1212, 1213, 1218, 1231-32, 1250, 1383-84, 1387, 1529, 1534, 1538, 1545, 1548, 1550, 1552, 1566).  Also, during Dr. Slowik's consultative examination, plaintiff explained that "his anxiety about leaving home is also due to his concern about having an IBS attack out in public.  [Plaintiff] indicated that he always brings extra clothes in case he does have an attack."  T. at 1295.  Dr. Slowik determined that plaintiff's ability to maintain an ordinary routine and regulate his emotions was moderately to markedly limited and that his "[d]ifficulties are caused by distractibility, anxiety, and depression."  Id. at 1297.

Throughout his decision, the ALJ reiterated some of the treatment records that "advised that [plaintiff's] gastrointestinal disturbance is aggravated by anxiety and due to this and the embarrassment caused by it, leaving his home is difficult[]"; plaintiff "said he does not leave his house very often due to his issues with IBS[]"; between 2015 and 2017, "[plaintiff] continued to receive mental health treatment for anxiety and depression" and "[d]uring this time, [plaintiff] reported symptoms of anxiety, depression and IBS, including that he had increased anxiety around people and crowds and fears of incontinence episodes[]"; and that "medical records describe episodes of diarrhea in conjunction with his anxiety."  T. at 611-14 (citing T. at 349, 438, 441-44, 1168, 1177,

1181, 1189, 1192, 1203, 1208, 1212-14, 1231-32).  The ALJ also reiterated Dr.

Shumeyko's statement that plaintiff's "anxiety significantly exacerbates his IBS" and the

ALJ limited plaintiff to "a low stress job."  Id. at 618.

Although the ALJ acknowledged certain records and a portion of Dr. Shumeyko's

opinion that are supportive of plaintiff's arguments, the ALJ did not explain how or why

the identified records were consistent or inconsistent with Dr. Shumeyko's opinions.

See T. at 617-18.  He also did not acknowledge the inverse of Dr. Shumeyko's opinions,

which stated that not only does anxiety cause IBS flares, but IBS flares cause anxiety.

See id. at 1470, 1559.  The ALJ did not then explain how a low stress job would account

for plaintiff's IBS flares.  See T. at 617-18; see also Dkt. No. 9 at 23.

Similarly, the ALJ concluded that plaintiff "should have restrooms that are readily

accessible and available to" him but did not explain how often plaintiff may need to take

breaks to use the restroom and whether those breaks would fall within the normal work

schedule.  T. at 610.  This is despite the medical opinions concluding that plaintiff would

need to take a lot of breaks and would struggle to maintain a schedule.  See id. at 414,

1297, 1464.  Plaintiff relies on Tina M. v. Comm'r of Soc. Sec., in which the court

explained that the ALJ "determined that [the plaintiff] 'would need ready and easy

access to a bathroom,' he failed to make specific findings as to the frequency or

duration of [the plaintiff's] bathroom use."  No. 19-CV-1481 (LJV), 2021 WL 1298492, at

*6 (W.D.N.Y. Apr. 7, 2021).  The court remanded the ALJ's decision for further

proceedings because the ALJ "did not, for example, address whether her bathroom

breaks would fit into the standard breaks in a workday or whether the frequency with

which she would need to use the restroom would require that she use the restroom

more than that." Id.  The Court also stated that the ALJ did not "discuss whether the total amount of time [the plaintiff] needed to spend in the restroom would exceed the maximum of fifty minutes that the vocational expert said workers could be off task." Id.

Here, too, the ALJ concluded that plaintiff "should have restrooms that are readily accessible and available[.]"  T. at 610.  The ALJ did not, however, explain whether plaintiff's need to use the restroom would cause her to be off task or miss work to such a degree as opined by the medical opinions and that would result in a finding of disability.  For example, the ALJ acknowledged Dr. Dhiman's testimony that plaintiff would need to leave work or would miss work one day a month due to his IBS symptoms, but the ALJ did not discuss Dr. Dhiman's testimony that plaintiff would likely be in the restroom for longer than normal and multiple times a day.  See T. at 614, 638-39.  The ALJ did not explain whether the number of times and the length of time plaintiff would need to use the restroom could be accommodated in a normal workday.  See id. at 614-18.  As the ALJ did not provide "good reasons" for discounting Dr. Shumeyko's off-task and absenteeism limitations, the Commissioner's decision is reversed.  See Pardee v. Astrue, 631 F. Supp. 2d 200, 216-17 (N.D.N.Y. 2009) ("When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.").

Further, the ALJ's reasons for discounting Dr. Moore and Slowik's opinions that the plaintiff had marked limitations in maintaining a schedule are not supported by substantial evidence.  See Dkt. No. 9 at 23-24.  In reviewing Dr. Moore and Slowik's opinions, the ALJ concluded that a marked limitation was not consistent with the record

because plaintiff "attend[ed] his regularly scheduled treatment and medical management appointments" and "attended telepsychiatry visits on a consistent basis." T. at 615-16 (citations omitted).

The Second Circuit recently stated, "that relying on attendance at medical appointments is unhelpful in determining whether an individual with significant psychiatric issues can consistently show up and successfully function in a work environment." Rucker v. Kijakazi, 48 F.4th 86, 93 (2d Cir. 2022) (collecting cases). The Court noted that "a claimant's regular attendance at medical appointments says very little about her ability to work during her appointments. Indeed, it would seem that a person suffering from [significant impairments] would have a strong interest in attending appointments and seeking relief rather than missing appointments." Id. (quoting Virden v. Colvin, No. 14-CV-1219, 2015 WL 5598810, at *11 (C.D. Ill. Sept. 22, 2015)). The Court concluded that this was not a "good reason" to discount the treating physician's opinion. Id. at 92-93.

Although Drs. Moore and Slowik are not treating physicians, it was inappropriate for the ALJ to discount their opinions based on plaintiff's ability to attend appointments. See Davila v. Comm'r of Soc. Sec., No. 17-CV-6013 (JGK), 2019 WL 1244661, at *11 (S.D.N.Y. Mar. 18, 2019) ("The ALJ rationalized that the plaintiff would not struggle to maintain attendance and focus in a job because he was able to attend therapy and take his medication. This was a poor reason to discount the treating doctors' and consultative examiners' opinions. There is plainly a difference between showing up at work each day and attending periodic therapy sessions."). But see Sharon R. v. Kijakazi, No. 3:20-CV-902 (ATB), 2021 WL 3884257, at *7 (N.D.N.Y. Aug. 31, 2021)

(reviewing the ALJ's consideration of the consultative examiner's opinion and concluding that "the ALJ did not err in relying on [the] plaintiff's ability to attend her medical appointments in addition to all of her other daily activities in determining that there were no "marked" limitations to maintaining a routine."); Della M. v. Comm'r of Soc. Sec., No. 3:18-CV-1281(TWD), 2020 WL 1030645, at *6 (N.D.N.Y. Mar. 3, 2020) (concluding that the ALJ did not err where he "afforded partial weight to Dr. Slowik's opinion, but rejected the marked limitations for maintaining a regular schedule, and pointed to [the p]laintiff's ability to care for three children and her elderly parents, drive, shop, and attend her medical appointments.  The ALJ indicated these activities showed [the p]laintiff could maintain a schedule."); Marvin v. Colvin, No. 3:12-CV-1779 (GLS), 2014 WL 1293509, at *6 (N.D.N.Y. Mar. 31, 2014) (finding that ALJ's did not err where he "explained that [the consultative examiner's] opinion was inconsistent with the record because, while [the examiner] stated that [the plaintiff] would have difficulty maintaining a schedule, the record indicates that she regularly attends her methadone treatment and appointments.").

Here, to discount greater limitations in plaintiff's ability to maintain a routine or schedule, the ALJ did not rely on any evidence other than plaintiff's ability to attend medical appointments.  See T. at 615-16; see also Sharon R., 2021 WL 3884257, at *7 (relying on more than the plaintiff's ability to attend appointments); Della M., 2020 WL 1030645, at *6 (same).  Without more, this an improper basis to conclude that plaintiff would be able to maintain a work schedule, eight hours a day, five days a week; and in light of the Second Circuit's decision in Rucker, this error supports reversing the ALJ's decision.  See Rucker, 48 F.4th at 93.

## B.  Nature of the Remand

Once a decision is reversed, remand for rehearing under sentence four is appropriate "if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning." Pardee, 631 F. Supp. 2d at 217.  "A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level." Id.  Finally, "[r]eversal without remand, while unusual, is appropriate when there is 'persuasive proof of disability' in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency." Id. (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  Here, remand is warranted because there is not persuasive proof of disability.  Remand pursuant to sentence four is appropriate so that the ALJ may explain his or her reasoning and because neither plaintiff nor the Commissioner have presented new, noncumulative evidence that should be considered by the agency.

First, this is not a circumstance where there is conclusive proof of disability, and the Court will not remand for the calculation of benefits.  "[A] remand solely for the calculation of benefits is an extraordinary action." Lori H. v. Kijakazi, No. 3:20-CV-1303 (DJS), 2022 WL 675702, at *3 (N.D.N.Y. Mar. 7, 2022) (citation omitted).  "[A] remand solely for calculation of benefits is appropriate only where the record 'provide[s] persuasive evidence of total disability that [would render] any further proceedings pointless.'" Id. (quoting Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013) (per curiam)) (collecting cases).

Here, Dr. Shumeyko's opinion appears contradictory as he checked both boxes which state that plaintiff's IBS causes symptoms that are simultaneously urgent and not

urged.  See T. at 1463.  He also checked both boxes to indicate that plaintiff's

symptoms would require unlimited access to the bathroom, but that plaintiff's symptoms

could be accommodated by normal breaks.  See id.  The ALJ did not contact Dr.

Shumeyko to seek clarification on his opinion or discuss this seemly contradictory

portion of the opinion in his decision.  It is not for this Court to resolve this inconsistency

or to decide which version of the opinion to credit.  See Appling v. Comm'r of Soc. Sec.,

No. 21-CV-5091 (SLC), 2022 WL 3594574, at *9 (S.D.N.Y. Aug. 23, 2022) ("Indeed, '[i]n

a case where, as here, there is conflicting medical evidence, remand simply for the

calculation of benefits is unwarranted.'") (citation omitted) (collecting cases that

remanded for fourth and fifth ALJ hearings); see also Longley v. Saul, No. 19-CV-

6278L, 2020 WL 2507335, at *6 (W.D.N.Y. May 15, 2020) ("[B]ecause I find that the

ALJ's failure to adequately assess the medical opinions of record resulted in an RFC

determination that was not supported by substantial evidence, and because this is not a

case where the record contains such persuasive proof of disability that remand would

serve no purpose, remand for further proceedings is necessary.").

Next, as the Commissioner states, Dr. Dhiman's testimony was in terms of

"plausibil[ity]"—that plaintiff might need to use the restroom five to nine times a day—but

that does not equate to a conclusive finding of disability.  T. at 638; see also Dkt. No. 10

at 3.  Dr. Dhiman testified, unequivocally, that when plaintiff would need to use the

restroom, it would be urgent and immediate.  See T. at 638.  However, he also stated

that if plaintiff had unlimited access to a restroom, he would not anticipate that plaintiff

would "soil himself and then have to leave[.]"  Id. at 639.  The ALJ included in his RFC

determination a limitation on unlimited access to restrooms.  See id. at 610.  On

remand, the ALJ should determine the frequency and duration of plaintiff's need to use the restroom and whether it supports a finding of disability.

The Commissioner also relies on Dr. Chapman's initial disability determination in which Dr. Chapman did not opine any off task or absenteeism limitations.  See Dkt. No. 10 at 2; see also T. at 73.  Dr. Chapman's RFC conclusion is one sentence: "[plaintiff] retains the capacity to perform the basic mental demands of unskilled work."  T. at 73. Although it is true that Dr. Chapman did not opine off task or absenteeism limitations, it is also true the Second Circuit has stated that "conclusory remarks" that a plaintiff "would be able to perform 'unskilled work[]'" "could [hardly] constitute substantial medical evidence sufficient to undermine [a treating physician's] medical opinion." Colgan v. Kijakazi, 22 F.4th 353, 364 (2d Cir. 2022).  In Colgan, the state agency psychologist conducted a single assessment of the plaintiff and "noted that, at times, [the plaintiff] appeared to be 'appropriate,' 'not silly, not tearful and not emotional.'"  Id. The Court concluded that this was insufficient evidence to overcome a treating physician opinion.  See id.  Here, Dr. Chapman did not examine plaintiff, but reviewed treatment records and the consultative examination.  See T. at 71-72.  His conclusion was conclusory and because the Second Circuit has cautioned against reliance on conclusory assertions to discount treating physician opinions, the Court cannot say that Dr. Chapman's opinion constitutes substantial evidence in support of the ALJ's decision. See Colgan, 22 F.4th at 364.  However, the opinion does not conclusively demonstrate disability because Dr. Chapman, after reviewing the record, determined that plaintiff was not disabled.  See T. at 73; see also Cassandra A. v. Kijakazi, No. 3:21-CV-007 (ATB), 2022 WL 1597680, at *6-9 (N.D.N.Y. May 19, 2022) (concluding that the state agency

consultant's opinion which "concluded that [the] plaintiff had the RFC to perform the 'basic mental demands of unskilled work[]'" did constitute a contrary opinion by "concluding that [the] plaintiff did not require additional limitations for absenteeism and/or time off task, at least from a mental health perspective[]" but reversing and remanding the ALJ's decision because this contrary opinion did not constitute substantial evidence in support of RFC determination where multiple treating providers opined off task or absenteeism limitations).

Although it appears that plaintiff's contentions are supported by the record, because Dr. Shumeyko's opinion is internally contradictory and the ALJ did not contact him for clarification, Dr. Dhiman's testimony is not entirely conclusive, and the state agency consultant's silence on certain limitations does not automatically support or negate a finding of disbaility, remand for further proceedings is warranted.

Plaintiff asserts that there has been a "very long delay in this case" and "two prior remands," which weigh in favor of remand for the calculation of benefits.  Dkt. No. 9 at 25.  "[I]n the extraordinary instances in which courts have remanded solely for calculation of benefits, there typically has been a long delay in the SSA's adjudication of the claimant's claim."  Jose G. v. Kijakazi, No. 3:21-CV-01434 (TOF), 2022 WL 3593702, at *5 (D. Conn. Aug. 23, 2022); see also Virginia D. F. v. Comm'r of Soc. Sec., No. 5:21-CV-720 (GLS/CFH), 2022 WL 4652361, at *23 (N.D.N.Y. Aug. 29, 2022) ("When determining whether remand for the calculation of benefits is appropriate, courts [] consider the length of time that the plaintiff's application has been pending and whether there are any gaps in the record" and remanding where the "[[p]laintiff has appeared at five administrative hearings, there has been one remand from the Northern

District of New York, and three Appeals Council remand orders."), <u>report and recommendation adopted sub nom. Virginia F. v. Comm'r of Soc. Sec.</u>, 2022 WL 4619873 (N.D.N.Y. Sept. 30, 2022); <u>see, e.g.</u>, <u>Marcano v. Comm'r of Soc. Sec.</u>, No. 20-CV-4230 (JPO/RWL), 2021 WL 5315703, at *22 (S.D.N.Y. Nov. 16, 2021) ("[R]emand for calculation of benefits is warranted due to the significant delay [the plaintiff] has experienced in waiting for a final determination of his claim. . . .  Over eight years have passed.  [The plaintiff] has testified at three hearings, two ALJs have denied his benefits, and this Court has now twice found that the Commissioner erred in concluding that [the plaintiff] was not disabled."), <u>report and recommendation adopted</u>, 2022 WL 253083 (S.D.N.Y. Jan. 26, 2022).

Here, this case has been remanded once from the Northern District of New York and by the Appeals Council.  <u>See</u> <u>Brian D.</u>, 3:19-CV-605 (TWD), Dkt. No. 12; <u>see</u> <u>also</u> T. at 688-90.  One of plaintiff's applications for benefits has been pending for seven years, and the other has been pending for four years.  <u>See</u> T. at 953, 967.  The seven-year delay leans in favor of remanding for the calculation of benefits.  <u>See</u> <u>Marcano</u>, 2021 WL 5315703, at *22.  However, because the record does not unequivocally reflect that plaintiff is disabled, the Court is required to remand for further proceedings.

**C.  Whether New Evidence Can Be Considered on Remand for Rehearing**

In the Commissioner's motion for remand, the Commissioner stated that "a remand for further administrative proceedings is warranted under sentence four of 42 U.S.C. § 405(g)."  Dkt. No. 10 at 1.  However, the Court agrees with plaintiff that the Commissioner does not appear to be seeking a sentence four remand because the Commissioner did not seek "a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security[.]" 42 U.S.C. § 405(g) (sentence four). Rather,

the Commissioner's remand request is more appropriately characterized as a sentence

six remand because the Commissioner is asking the Court to "remand the case to the

Commissioner of Social Security for further action by the Commissioner of Social

Security"[,] the Commissioner did not present any new evidence to the Court, and the

Commissioner sought remand of the decision prior to filing an answer which is more

akin to a sentence six remand. See id. (sentence six) ("The court may, on motion of the

Commissioner of Social Security made for good cause shown before the Commissioner

files the Commissioner's answer, remand the case to the Commissioner of Social

Security for further action . . . ."); see also Pardee, 631 F. Supp. 2d at 217 ("A remand

pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence

proffered to the district court should be considered at the agency level."); Longey v.

Sullivan, 812 F. Supp. 453, 457 (D. Vt. 1993) ("It is also noteworthy that the defendant

did not ask the Court to affirm, modify, or reverse the administrative decision when he

requested a remand; the Secretary requested only that the Court remand for the

purpose of more fully developing the record and taking new evidence. Presumably, the

Secretary wanted to reassess the initial decision before answering and before final

judgment by the Court. Otherwise, to obtain a remand under sentence four, he is

constrained by statute to answer the Complaint and request a remand as part of his

relief."); see also Davidson v. Colvin, No. 1:12-CV-316 (MAD/VEB), 2013 WL 5278670,

at *5 (N.D.N.Y. Sept. 18, 2013) (citing Lisa v. Sec'y of Dep't of Health and Human

Servs., 940 F.2d 40, 43 (2d Cir. 1991)) ("[C]ommonly referred to as a 'sentence six

remand,' [it] is only appropriate if new, non-cumulative evidence presented to the

District Court should be considered by the Commissioner and if the claimant can establish good cause for having failed to present the evidence during the original administrative proceedings."). Therefore, to the extent the Commissioner states that the remand is sought pursuant to "sentence four[,]" the motion is granted. Dkt. No. 10 at 1. However, to the extent it appears that the Commissioner is practically seeking a sentence six remand, the motion is denied. See id.

Plaintiff requests that on remand the ALJ not be permitted to consider additional evidence. See Dkt. No. 11 at 1. The Commissioner asserts that "[p]laintiff did not provide any rationale or authority" for remanding without the consideration of new evidence "and the Commissioner is aware of none." Dkt. No. 10 at 1. As plaintiff states, under a sentence six remand, the Court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g) (sentence six); see also Dkt. No. 11 at 2. However, the Court has determined that a sentence four remand is appropriate. Sentence four is silent as to the introduction and consideration of new evidence on remand for rehearing and plaintiff does not provide authority on this issue. See 42 U.S.C. § 405(g) (sentence four); see generally Dkt. Nos. 9, 11.

As the Commissioner states, when a case is remanded from the Court, "[i]f the Appeals Council (AC) remands a case to the hearing level after a court remand, it generally vacates the entire administrative law judge (ALJ) decision, and the ALJ must consider all pertinent issues de novo." Hearings, Appeals, and Litigation Law Manual

("HALLEX"), I-2-8-18(A);[8] <u>see</u> <u>also</u> Dkt. No. 10 at 2.  When the Appeals Council

"vacates an ALJ decision in an initial entitlement case, the AC will usually direct that the

ALJ offer the claimant an opportunity for a new hearing and issue a new decision in the

case.  The ALJ will generally decide the remanded issues through the date of the new

hearing decision . . . ."  <u>Id.</u>  The HALLEX does not state whether the ALJ should, can, or

cannot obtain new evidence following a remand.  <u>See</u> <u>id.</u>

      Courts in Southern District of New York have declined to conclude whether an

ALJ may consider new evidence following a sentence four remand.  <u>See</u> <u>Rogers v.</u>

<u>Astrue</u>, 895 F. Supp. 2d 541, 555, n.7 (S.D.N.Y. 2012) ("The Court expresses no view

on whether the A[LJ] may consider this evidence when attempting to properly and fully

develop the record, leaving this issue to be decided in the first instance by the A[LJ]")

(citing <u>Tornatore v. Barnhart</u>, No. 05-CV-6858 (GEL), 2006 WL 3714649, at *6, n.5

(S.D.N.Y. Dec. 12, 2006) (remanding under sentence four and explaining that "[t]hough

the issue of whether the 2005 evidence may be considered by *this* Court is moot, there

may be a live issue on remand with respect to whether the *ALJ* can or should take the

2005 evidence into account. . . .  The parties, however, have not addressed that issue,

nor is resolution of the issue necessary to this Court's decision.  Accordingly, the Court

expresses no view on the matter and leaves the issue to the Commissioner to address

in the first instance on remand.")).

---

[8] "The HALLEX is a manual that provides the Social Security Administration with a set of guidelines and procedures. . . .  Although not binding, the HALLEX provides a helpful guideline in determining the proper procedure . . . ."  <u>Dority v. Comm'r of Soc. Sec.</u>, No. 7:14-CV-00285 (GTS), 2015 WL 5919947, at *5 (N.D.N.Y. Oct. 9, 2015).  HALLEX procedures can be found in the online manual.  <u>See</u> HALLEX, Social Security Administration, https://www.ssa.gov/OP_Home/hallex (last visited Jan. 31, 2023).

However, Courts have allowed new evidence to be considered by an ALJ following a sentence four remand where there was new evidence submitted to the Appeals Council, or where additional evidence would aid in the decision.  See Swain v. Astrue, No. 12-CV-6233P, 2014 WL 1315399, at *11 (W.D.N.Y. Mar. 31, 2014) (citation omitted) (remanding pursuant to sentence four and ordering the ALJ to consider evidence that was submitted to the Appeals Council and "the Commissioner should obtain valid IQ scores for petitioner and obtain a consultative psychological evaluation to assess petitioner's mental capabilities."); Titus ex rel. N.M.C. v. Astrue, No. 09-CV-0093 (GTS/VEB), 2010 WL 3323738, at *9 (N.D.N.Y. July 6, 2010) (recommending sentence four remand and that "Dr. Fras should be re-contacted to provide a further explanation regarding the impact of medication on Claimant's limitations, his assessment with regard to the nature and extent of those limitations during the relevant time period, and the basis for his assessment."); report and recommendation adopted sub nom. Titus v. Comm'r of Soc. Sec., 2010 WL 3323744 (N.D.N.Y. Aug. 20, 2010). These cases demonstrate that considering new evidence following a sentence four remand is not foreclosed.

Courts outside of this Circuit have directly answered this issue.  For example, district courts in the Eleventh Circuit instruct the ALJ to consider new material evidence following a sentence four remand.  See, e.g., Delker v. Comm'r of Soc. Sec., 658 F. Supp. 2d 1340, 1366, n.5 (M.D. Fla. 2009) (citing cases from the Eleventh Circuit that ordered the ALJ to consider new evidence) ("On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence."); Aloi v. Comm'r of Soc. Sec., No. 5:22-CV-200 (TJC/PRL), 2023 WL 168776, at *1 (M.D.

Fla. Jan. 12, 2023) (same).  Similarly, the District of Arizona has concluded that "[u]nder sentence four of § 405(g), a court may remand a case to the SSA and may order that additional evidence related to the sentence four remand be considered."  Zlotoff v. Comm'r of Soc. Sec. Admin., No. CV-19-02829 (PHX/JAT), 2020 WL 6938203, at *3 (D. Ariz. Nov. 25, 2020) (citing cases from the Northern District of California, Sixth Circuit, Western District of Tennessee, and the Eastern District of Michigan).

As there is no clear guidance from the Second Circuit on this issue, neither party submitted new evidence to the Appeals Council or the Court, and neither party contends that they want or will need to obtain new evidence to present to the ALJ, the Court expresses no view as to whether the ALJ may obtain new evidence following this Court's remand pursuant to sentence four of 42 U.S.C. § 405(g).  Rather, the Court concludes only that (1) reversal of the ALJ's decision is appropriate where he failed to correctly apply the relevant legal standards in reviewing plaintiff's treating physician's opinion and his RFC determination is not supported by substantial evidence as to plaintiff's ability to maintain a schedule; (2) remand for rehearing is appropriate as there is not conclusive proof of disability; and (3) on remand, the ALJ should assiduously apply the relevant regulations and review all the evidence in light of those regulations.

### V.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's motion, Dkt. No. 10, be **GRANTED** insofar as the Commissioner seeks remand for rehearing; and it is further

**ORDERED**, that plaintiff's motion for judgment on the pleadings, Dkt. No. 9, be **GRANTED** insofar as he seeks reversal and remand of the Commissioner's decision for further proceedings; and it is further

**ORDERED**, that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Date:   February 3, 2023
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge